IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

GORDON BROOKS,

    Petitioner,                                 No. CIV S-08-862 MCE CHS P

    vs.

D.K. SISTO, Warden, et al.,

    Respondents.       FINDINGS AND RECOMMENDATIONS
_____/

## I. INTRODUCTION

Petitioner Brooks is a state prisoner proceeding pro se with an amended petition for writ of habeas corpus pursuant to 28 U.S.C. §2254. Petitioner is currently serving a sentence of 15 years to life following his 1992 second degree murder conviction in the Calaveras County Superior Court. In the pending petition, petitioner presents a single claim challenging the execution of his sentence, and specifically, the January 2, 2007 decision by the Board of Parole Hearings that he was not suitable for parole. Based on a thorough review of the record and applicable law, it is recommended that the petition be denied.

## II. BACKGROUND

On June 30, 1990, petitioner smoked marijuana and used methamphetamine at the home of his friend Terry, a drug dealer. At some point, Pini, the victim, arrived at Terry's home.

1

According to Frombaugh, who testified at petitioner's trial in exchange for sentencing considerations for his part in the crime, petitioner thought Pini had stolen $10,000 from Terry and petitioner beat Pini with a crowbar in attempt to get him to confess.  Petitioner beat Pini severely enough to leave a large puddle of blood about ten inches in radius on the garage floor.  At petitioner's direction, Frombaugh tied Pini's hands with a rope and put tape over his mouth.  Terry fashioned a weighted chain out of wrenches, a large steel plate, and a metal chain.  Frombaugh and petitioner drove Pini to Lake Tulloch, took him out on a boat, attached the weighted chain to him, and threw him overboard.  There was evidence that Pini was still alive and conscious at the time he was thrown overboard.

Pini's body was found was found floating in the lake on July 18, 1990.  Petitioner was arrested, found guilty by jury of second degree murder, and sentenced to a term of 15 years to life in state prison.

Petitioner was received in prison on July 8, 1992.  His minimum eligible parole date passed on August 28, 2001.  On January 2, 2007, the Board of Parole Hearings ("Board") conducted a second subsequent (third overall) hearing to determine whether petitioner was suitable to be released on parole.  A panel of the Board concluded that petitioner still posed an unreasonable risk of danger to the public, and thus that he was not suitable for parole.

Petitioner challenged the Board's denial of parole as a violation of due process in a petition for writ of habeas corpus to the Calaveras County Superior Court; the claim was denied in a brief reasoned decision dated June 21, 2007.  The California Court of Appeal, Third District, and the California Supreme Court likewise denied relief, but without written opinions.

### III.  APPLICABLE LAW FOR FEDERAL HABEAS CORPUS

An application for writ of habeas corpus by a person in custody under judgment of a state court can be granted only for violations of the Constitution or laws of the United States.  28 U.S.C. §2254(a); *see also Peltier v. Wright*, 15 F.3d 860, 861 (9th Cir. 1993); *Middleton v. Cupp*, 768 F.2d 1083, 1085 (9th Cir. 1985) (*citing Engle v. Isaac*, 456 U.S. 107, 119 (1982)).

Additionally, this petition for writ of habeas corpus was filed after the effective date of, and thus is subject to, the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *Lindh v. Murphy*, 521 U.S. 320, 326 (1997); *see also Weaver v. Thompson*, 197 F.3d 359 (9th Cir. 1999). Under AEDPA, federal habeas corpus relief is not available for any claim decided on the merits in state court proceedings unless the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *see also Penry v. Johnson*, 532 U.S. 782, 792-93 (2001); *Williams v. Taylor*, 529 U.S. 362, 402-03 (2000); *Lockhart v. Terhune*, 250 F.3d 1223, 1229 (9th Cir. 2001). This court looks to the last reasoned state court decision in determining whether the law applied to a particular claim by the state courts was contrary to the law set forth in the cases of the United States Supreme Court or whether an unreasonable application of such law has occurred. *Avila v. Galaza*, 297 F.3d 911, 918 (9th Cir. 2002), *cert. dismissed*, 538 U.S. 919 (2003).

## IV.  DISCUSSION

Petitioner presents a single claim for relief: that the Board's decision to deny parole following the January 2, 2007 suitability hearing violated his right to due process of law. The Due Process Clause of the Fourteenth Amendment prohibits state action that deprives a person of life, liberty, or property without due process of law. A person alleging a due process violation must first demonstrate that he or she was deprived of a protected liberty or property interest, and then show that the procedures attendant upon the deprivation were not constitutionally sufficient. *Kentucky Dep't. of Corrections v. Thompson*, 490 U.S. 454, 459-60 (1989); *McQuillion v. Duncan*, 306 F.3d 895, 900 (9th Cir. 2002).

A protected liberty interest may arise from either the Due Process Clause itself or from state laws. *Board of Pardons v. Allen*, 482 U.S. 369, 373 (1987). The United States

Constitution does not, in and of itself, create for prisoners a protected liberty interest in receipt of a parole date. *Jago v. Van Curen*, 454 U.S. 14, 17-21 (1981). If a state's statutory parole scheme uses mandatory language, however, it creates "a presumption that parole release will be granted," thereby giving rise to a constitutional liberty interest. *McQuillion*, 306 F.3d at 901 (*quoting Greenholtz v. Inmates of Nebraska Penal*, 442 U.S. 1, 12 (1979)). California's statutory scheme for determining parole for life-sentenced prisoners provides, generally, that parole shall be granted "unless consideration of the public safety requires a more lengthy period of incarceration." Cal. Penal Code §3041. This statute gives California state prisoners whose sentences carry the possibility of parole a clearly established, constitutionally protected liberty interest in receipt of a parole release date. *Irons v. Carey*, 505 F.3d 846, 850-51 (9th Cir. 2007) (*citing Sass v. Cal. Bd. of Prison Terms*, 461 F.3d 1123, 1128 (9th Cir. 2006)); *Biggs v. Terhune*, 334 F.3d 910, 914 (9th Cir. 2003); *McQuillion*, 306 F.3d at 903; *Allen*, 482 U.S. at 377-78 (*quoting Greenholtz*, 442 U.S. at 12)).

Despite existence of this liberty interest, the full panoply of rights afforded a defendant in a criminal proceeding is not constitutionally mandated in the context of a parole proceeding. *See Pedro v. Or. Parole Bd.*, 825 F.2d 1396, 1398-99 (9th Cir. 1987). The Supreme Court has held that a parole board's procedures are constitutionally adequate if the inmate is given an opportunity to be heard and a decision informing him of the reasons he did not qualify for parole. *Greenholtz*, 442 U.S. at 16.

Additionally, as a matter of California state law, denial of parole to state inmates must be supported by at least "some evidence" demonstrating future dangerousness. *Hayward v. Marshall*, 603 F.3d 546, 562-63 (9th Cir. 2010) (en banc) (citing *In re Rosenkrantz*, 29 Cal.4th 616 (2002), *In re Lawrence*, 44 Cal.4th 1181 (2008), and *In re Shaputis*, 44 Cal.4th 1241 (2008)). California's "some evidence" requirement is a component of the liberty interest created by the state's parole system." *Cooke v. Solis*, 606 F.3d 1206, 1213 (9th Cir. 2010). The federal Due Process Clause requires that California comply with its own "some evidence" requirement.

*Pearson v. Muntz*, 606 F.3d 606, 609 (9th Cir. 2010) (per curiam).  Accordingly, the United States Court of Appeals for the Ninth Circuit has held that a reviewing court such as this one must "decide whether the California judicial decision approving the... decision rejecting parole was an "unreasonable application" of the California 'some evidence' requirement, or was "based on an unreasonable determination of the facts in light of the evidence." *Hayward*, 603 F.3d at 562-63.  This analysis is framed by California's own statutes and regulations governing parole suitability determinations for its prisoners.  *See Irons*, 505 F.3d at 851.

Title 15, Section 2402 of the California Code of Regulations sets forth various factors to be considered by the Board in its parole suitability findings for murderers.  The Board is directed to consider all relevant, reliable information available regarding

> the circumstances of the prisoner's social history; past and present mental state; past criminal history, including involvement in other criminal misconduct which is reliably documented; the base and other commitment offenses, including behavior before, during and after the crime; past and present attitude toward the crime; any conditions of treatment or control, including the use of special conditions under which the prisoner may safely be released to the community; and any other information which bears on the prisoner's suitability for release.

15 Cal. Code Regs. §2402(b).  The regulation also sets forth specific circumstances which tend to show unsuitability or suitability for parole:

> (c) Circumstances Tending to Show Unsuitability. The following circumstances each tend to indicate unsuitability for release. These circumstances are set forth as general guidelines; the importance attached to any circumstance or combination of circumstances in a particular case is left to the judgment of the panel. Circumstances tending to indicate unsuitability include:
>
> (1) Commitment Offense. The prisoner committed the offense in an especially heinous, atrocious or cruel manner....
>
> (2) Previous Record of Violence. The prisoner on previous occasions inflicted or attempted to inflict serious injury on a victim, particularly if the prisoner demonstrated serious assaultive behavior at an early age.
>
> (3) Unstable social history.  The prisoner has a history of unstable or tumultuous relationships with others.

(4) Sadistic Sexual Offenses. The prisoner has previously sexually assaulted another in a manner calculated to inflict unusual pain or fear upon the victim.

(5) Psychological Factors. The prisoner has a lengthy history of severe mental problems related to the offense.

(6) Institutional Behavior. The prisoner has engaged in serious misconduct in prison or jail.

(d) Circumstances Tending to Show Suitability. The following circumstances each tend to show that the prisoner is suitable for release. The circumstances are set forth as general guidelines; the importance attached to any circumstance or combination of circumstances in a particular case is left to the judgment of the panel. Circumstances tending to indicate suitability include:

(1) No Juvenile Record. The prisoner does not have a record of assaulting others as a juvenile or committing crimes with a potential of personal harm to victims.

(2) Stable Social History. The prisoner has experienced reasonably stable relationships with others.

(3) Signs of Remorse. The prisoner performed acts which tend to indicate the presence of remorse, such as attempting to repair the damage, seeking help for or relieving suffering of the victim, or indicating that he understands the nature and magnitude of the offense.

(4) Motivation for Crime. The prisoner committed his crime as the result of significant stress in his life, especially if the stress has built over a long period of time.

(5) Battered Woman Syndrome. At the time of the commission of the crime, the prisoner suffered from Battered Woman Syndrome, as defined in section 2000(b), and it appears the criminal behavior was the result of that victimization.

(6) Lack of Criminal History. The prisoner lacks any significant history of violent crime.

(7) Age. The prisoner's present age reduces the probability of recidivism.

(8) Understanding and Plans for Future. The prisoner has made realistic plans for release or has developed marketable skills that can be put to use upon release.

(9) Institutional Behavior. Institutional activities indicate an

1         enhanced ability to function within the law upon release.

2   15 Cal. Code Regs. § 2402(c)-(d).

3         The overriding concern is public safety and the proper focus is on the inmate's *current* dangerousness. *In re Lawrence*, 44 Cal. 4th at 1205. Thus, the applicable standard of review is not whether some evidence supports the reasons cited for denying parole, but whether some evidence indicates that the inmate's release would unreasonably endanger public safety. *In re Shaputis*, 44 Cal.4th 1241, 1254 (2008). In other words, there must be a rational nexus between the facts relied upon and the ultimate conclusion that the prisoner continues to be a threat to public safety. *In re Lawrence*, 44 Cal. 4th at 1227.

      In this case, although many applicable regulatory criteria tend to show that petitioner is suitable for parole, the Board's decision to deny parole did not violate his right to due process because it is supported by some evidence in the record.

      Petitioner was born in 1970. He grew up Antioch, California and dropped out of school after completing the 11th grade. Petitioner reports working "odd jobs" including one as a machinist in his grandfather's machine shop. Petitioner has no juvenile record. As an adult, he incurred one felony conviction for possession of a controlled substance for sale. Petitioner admits previous use of marijuana and methamphetamine.

      After entering prison, petitioner obtained his GED in 1992. He began attending NA in 1995 and has participated in both AA and NA since that time. While in prison, petitioner availed himself of available, relevant self-help programming and maintained a record free of any discipline. Petitioner achieved several skill certifications and completed one or more vocations while in prison. At the time of the January 2, 2007 suitability hearing, petitioner held the position of Lead Man Journeyman Tool and Dye Maker for the Prison Industry Authority Metal Fab. He had received a positive evaluation from his supervisor. Several individuals, including two correctional officers, submitted letters of support on his behalf. Petitioner produced evidence of realistic parole plans including multiple job opportunities. The most recent

psychological evaluator opined that petitioner's estimated future dangerousness in the community was "low."

Thus, it is undisputed that petitioner has no juvenile record (15 Cal. Code Regs. §2402(d)(1)), no record of previous violence (15 Cal. Code Regs. §2402(c)(2)), and no history of sadistic sexual offenses (15 Cal. Code Regs. §2402(c)(4)).  There is no evidence that petitioner has suffered from severe mental problems or that he has psychological problems that would bear on his suitability (15 Cal. Code Regs. §2402(c)(5)).  There is no evidence of previous unstable or tumultuous relationships with others (15 Cal. Code Regs. §2402(c)(3)); rather, it appears that petitioner has maintained contact during incarceration with many family members including his mother, grandmother, sister, and a cousin.  Petitioner's prison record is free of serious misconduct (15 Cal. Code Regs. §2402(c)(6)), as he has never received a single "115" disciplinary report or even one of the less serious "128" write-ups during his entire incarceration.[1]  The psychological evaluator opined that petitioner has shown remorse (15 Cal. Code Regs. §2402(d)(d)).  Petitioner has participated in activities in prison that indicate an enhanced ability to function within the law upon release (15 Cal. Code Regs. §2402(d)(9)); it is also undisputed that he has also developed marketable skills and made realistic plans for his release (15 Cal. Code Regs. §2402(d)(8)).

Nevertheless, the Board found that the positive factors demonstrating petitioner's suitability for parole did not outweigh the negative factors demonstrating his unsuitability.  In finding that petitioner was not suitable to be released on parole, the Board relied heavily on the circumstances of his commitment offense.  Additionally, the Board cited petitioner's conduct prior to incarceration.  Before he committed his life crime, petitioner incurred a possession for

---

[1] A 115 "Rules Violation Report" is a report documenting misconduct that is "believed to be a violation of law or is not minor in nature ."  By contrast, a 128 is issued for minor misconduct that recurs after verbal counseling or where documentation of minor misconduct is needed.  15 Cal. Code Regs. §3312(a)(3).

sale felony drug conviction. He also failed to successfully complete his term of probation for that offense as the record indicates he had ceased reporting to his probation officer. On this basis, the Board found that petitioner had "failed to profit from society's previous attempts to correct [his] criminality." The Board concluded that petitioner was not suitable for parole.

On state habeas corpus review of the Board's decision, the Calaveras County Superior Court held:

> In the petition before the court there is some evidence before the Board supporting the decision to deny parole. The petitioner was convicted of 2nd degree murder. The facts before the board included that the petitioner hitting the victim [*sic*], knocking him down, telling a potential rescuer of the conduct to leave in a threatening manner, kicking the victim in the face while he was kneeling with a 20 inch pool of the victims blood and ordering the victim to write a confession. The petitioner told another person to help gather items including duct tape, rope and tools. Another person prepared weights of metal tools and a metal plate. The petitioner armed himself and took the victim who had flex cuffs on his wrists. They went to a boat in the lake with the victim. They went to the deepest part of the lake. Petitioner ordered the other person who was helping him to tie the victim and attach weights to the victim and help lift him over the side. The victim's eyes opened just before he went into the water. The cause of death was drowning... Petitioner was previously convicted of felony possession of a controlled substance for sale, on December 12, 1990 in Cont[r]a Costa County... These facts are "some evidence" that the offense was carried out in a manner that demons[tr]ates an exceptionally callous disregard for human suffering... the crime went far beyond the minimum elements. There is "some evidence" that the Board found the petitioner had failed to profit from probation in his prior conviction... [¶] THE PETITION FOR [WRIT] OF HABEAS CORPUS IS DENIED.

(*In re Gordon Brooks*, Case No. C12828, slip op. at 1-3 (Calaveras County Sup. Ct. June 21, 2007). It must now be determined whether this decision is an unreasonable application of California's "some evidence" standard or based on an unreasonable determination of the facts in light of the evidence. *See Hayward*, 603 F.3d at 562-63.

Under some circumstances, a prisoner's commitment offense can by itself constitute a valid basis for denying parole. *In re Rosenkrantz*, 29 Cal.4th at 682. In order for the circumstances of a commitment offense to support the denial of parole, there must be "something

in the prisoner's pre- or post-incarceration history, or his or her current demeanor and mental state," that indicates "the implications regarding the prisoner's dangerousness that derive from his or her commission of the commitment offense remain probative to the statutory determination" of the prisoner's current or future dangerousness. *See Cooke*, 606 F.3d at 1216 (quoting *In re Lawrence*, 44 Cal. 4th 3d at 1214).

Under the applicable state regulations, factors relating to a commitment offense tend to show unsuitability for parole where (A) multiple victims were attacked, injured or killed; (B) the offense was carried out in a dispassionate and calculated manner, such as an execution-style murder; (C) the victim was abused, defiled or mutilated; (D) the offense was carried out in a manner which demonstrates an exceptionally callous disregard for human suffering; or (E) the motive for the crime is inexplicable or very trivial in relation to the offense." 15 Cal. Code Regs. §2402 (c)(1)(A)-(E).

In this case, the Board noted that three of the above factors had support in the record, while the state superior court explicitly found one of the above factors to be supported in the record. To begin, the Board described the motive for petitioner's offense as "inexplicable." In order to fit the applicable regulatory description for an inexplicable or very trivial offense, a prisoner's motive must have been *more* trivial than those which conventionally drive people to commit the offense in question. *See In re Scott*, 119 Cal.App.4th 871, 893 (1st Dist. 2004) (*Scott I*) (reasoning that all motives for murder could reasonably be deemed "trivial"). The reasoning behind this factor is that one whose motive is unintelligible or cannot be explained may be unusually unpredictable and dangerous. *Id*. Here, there was evidence in the record that the victim was believed to have stolen $10,000 from Terry and that petitioner essentially tortured the victim in an unsuccessful effort to make him confess to the theft. Such retaliation for the theft of another's money is a trivial reason to brutally torture and kill someone. Under the circumstances of this case, where petitioner's conduct during the offense was so heinous, a conclusion that he may be unusually unpredictable and dangerousness due to his trivial motive is not unreasonable.

1         The Board additionally found that the offense was carried out in a dispassionate
2  and calculated manner in that it appeared to have been well planned, with "extreme steps of
3  movement of the victim, including taking the victim to the deepest part of the lake." Both the
4  Board and the state superior court found the offense was carried out with an exceptionally callous
5  disregard for human suffering, because the record indicated the offense lasted for an extended
6  period of time during which the victim was severely beaten, tied, and then tossed into the lake
7  while he was still alive. Indeed, petitioner's conduct in torturing the victim prior to the murder
8  can fairly be characterized as *especially* heinous compared to the typical conduct of a person who
9  commits second degree murder.

10        The Board further cited, as support to deny parole, the fact that petitioner had a
11  prior felony conviction and the related fact that he failed to successfully complete his term of
12  probation for that offense. Petitioner's prior felony conviction and certain elements of his life
13  crime both appear to be related to drugs. His criminal history is fairly characterized as
14  demonstrating escalating criminal conduct in this regard. *But see Pirtle v. California Bd. of*
15  *Prison Terms*, 611 F.3d 1015, 1022-23 (9th Cir. 2010) (fact that the prisoner had previously
16  served two brief jail terms for non-violent, alcohol related offenses was not some evidence that
17  he could not be counted on to avoid future criminality).

18        While the circumstances relied upon by the Board and the state superior court in
19  this case to deny petitioner parole are indeed immutable factors that he is forever unable to
20  change, this is not a case in which the continued reliance on such factors rises to the level of a
21  due process violation. *See generally Biggs*, 334 F.3d at 916 (cautioning that "[o]ver time...
22  should [a prisoner] continue to demonstrate exemplary behavior and evidence of rehabilitation,
23  denying him a parole date simply because of the nature of [his] offense and prior conduct would
24  raise serious questions involving his liberty interest in parole") (overruled on other grounds in
25  *Hayward*, 603 F.3d at 555, 563). The parole suitability hearing at issue took place approximately
26  17 years after petitioner committed his life crime and just under 15 years after he entered state

prison. "In the present instance, the parole board's sole supportable reliance on the gravity of the offense and conduct prior to imprisonment to justify denial of parole can be [ ] justified as fulfilling the requirements set by state law." *Biggs*, 334 F.3d at 916 (upholding the parole board's reliance solely on immutable, unchanging factors to deny parole where inmate's life crime occurred approximately 18 years prior and he had been incarcerated for approximately 15 years) (overruled on other grounds in *Hayward*, 603 F.3d at 555, 563). Like the prisoner in *Biggs*, who took part in a conspiracy to murder a witness to a lesser crime, but did not actually commit the murder himself, petitioner has been a "model inmate," however, the circumstances of his heinous offense tend to show that he may be unusually dangerous and that the implications of his dangerousness derived from the circumstances of the offense itself remained probative at the time of the Board's denial of parole.

As discussed herein, the overarching consideration in the parole suitability determination is whether the inmate poses a current or future threat to public safety. In this case, many positive factors appear in the record which are supportive of petitioner's release, such that a different panel might have concluded that the factors demonstrating suitability outweighed those demonstrating unsuitability. This court, however, is not authorized to re-weigh those factors, substituting its judgment for that of the Board. There is some evidence in the record that petitioner still posed an unreasonable risk of current or future danger to public safety at the time of his January 2, 2007 parole suitability hearing. In this case, the circumstances of petitioner's especially egregious commitment offense, during which he tortured and killed the victim in retaliation for the victim's alleged theft from another person, combined with petitioner's prior felony drug conviction and failed grant of probation provide the required modicum of evidence to support the Board's 2007 denial of parole.

V. CONCLUSION

For the foregoing reasons, IT IS HEREBY RECOMMENDED that the application for writ of habeas corpus be DENIED.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within seven days after service of the objections. Failure to file objections within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991). In any objections he elects to file Kelsaw may address whether a certificate of appealability should issue in the event he elects to file an appeal from the judgment in this case. *See* Rule 11, Federal Rules Governing Section 2254 Cases (the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant).

DATED: September 21, 2010

CHARLENE H. SORRENTINO
UNITED STATES MAGISTRATE JUDGE